## **EXPERT DECLARATION OF DR. MICHAELA ALMGREN**

**I.   Background and Qualifications**

1. My name is Michaela Almgren, Pharm.D., M.S. I am over the age of eighteen and competent to testify to the truth of the matters contained herein.

2. I am a clinical assistant professor in the Department of Clinical Pharmacy and Outcomes Sciences at the College of Pharmacy at University of South Carolina. I teach principles of sterile compounding per USP 797 and 800, aseptic technique and cGMP pharmacy regulations applicable in 503b compounding, as well as pharmacokinetics. I received my Doctor of Pharmacy degree from the USC campus of the South Carolina College of Pharmacy in 2010. I also have Master's Degree in Pharmaceutical Chemistry from University of Florida.

3. I also maintain a practice site at the 503b outsourcing pharmacy, where I perform duties of outsourcing compounding pharmacist, clinical advisor and pharmacy student preceptor. Previously I worked in pharmacy operations in Prisma Health Richland Hospital as a pharmacist. Prior to joining the faculty at the University of South Carolina, I worked for several years at GlaxoSmithKline and Pfizer where I was involved in drug formulation and analytical method development. My professional qualifications are Pharm.D. and M.S. in Pharmacy. A copy of my CV is attached.

4. I have been asked by the attorneys who represent Plaintiff Larry Swearingen to provide an expert medical and scientific opinion about whether there is a potential risk that the State's use of pentobarbital will fail to execute him based on the information and documentation provided to me.

**II.  Concerns About Compliance With Pharmacy Regulations Pertaining to the Sterile Compounding of the Pentobarbital Injection**

5. It is my understanding that the State of Texas intends to execute Mr. Swearingen by a single injection of compounded pentobarbital. For each execution, the State of Texas either uses 2 vials of 50 mg/mL (2.5 g) of pentobarbital, or 1 vial of 100mg/ml (5 g).

6. According to USP <797>, the set of regulations which provides guidelines (enforceable by FDA and Boards of Pharmacy) for sterile compounding in 503a pharmacy environment, sterile medications that are prepared from initially non-sterile components, or using a methodology that causes the preparation potentially to lose sterility, are considered high-risk sterile compounds. The preparation

then must be terminally sterilized if it is to be used for parenteral (ie. non-oral) application. Based on the information provided, the pentobarbital injection intended to be used in Mr. Swearingen's execution must be prepared in accordance with 503a compounding regulations for high risk compounded medications because the active pharmaceutical ingredient used to prepare that pentobarbital appears to be non-sterile powder.

    a.  **Improper Beyond Use Date**

    7.    It appears that the compounded drugs intended for use in Mr. Swearingen's execution are far beyond the USP recommended Beyond Use Date (BUD).

    8.    A Beyond Use Date is defined in USP <797> as "the date or time after which a CSP shall not be stored or transported. The BUD is determined from the date and time the preparation is compounded." A drug that has surpassed its Beyond Use Date is at risk of stability and sterility failings and may not retain sufficient potency.

    9.    22 Tex. Admin. Code § 291.133 requires that a product's beyond-use date shall be determined as outlined in Chapter 797, Pharmacy Compounding--Sterile Preparations of the USP/NF. The maximum Beyond Use Date for high-risk compounded sterile preparations such as compounded pentobarbital are:

- 24 hours, if stored at room temperature;
- 72 hours, if kept refrigerated, or
- 45 days, if kept in a solid, frozen state.[i]

    10.    In contravention of this policy, the drugs intended for use in Mr. Swearingen's execution have been given a Beyond Use Date far beyond what is appropriate under USP <797>, regardless of the temperature at which the drugs were stored.

    11.    Specifically, I understand that the State of Texas intends to execute Mr. Swearingen using vials of pentobarbital acquired on June 18, 2018. Pursuant to USP <797>, no matter how these vials have been stored, they exceeded their latest appropriate Beyond Use Date under USP <797> on August 2, 2018. Nevertheless, the State of Texas twice extended the Beyond Use Date of these vials beyond the latest appropriate date under USP <797>. First, the State of Texas assigned the vials a

Beyond Use Date of June 5, 2019, which exceeds the latest appropriate Beyond Use Date by 307 days. Even under this inappropriate deadline, the vials would have exceeded their Beyond Use Date by Mr. Swearingen's scheduled execution on August 21, 2019. Second, the State of Texas extended the Beyond Use Date of these vials by nearly an additional year to May 6, 2020. This means that the drugs intended for Larry Swearingen's execution will be 429 days old—and 394 days past the latest appropriate Beyond Use Date—if they are used in Mr. Swearingen's execution on August 21, 2019.

12. Beyond Use Dates may be extended in certain circumstances, but I have seen no evidence to indicate that the State of Texas has a scientific basis for doing so here. In order to extend a Beyond Use Date for a compounded drug, a stability study must be performed to show that the preparation maintains chemical potency and sterility. Random testing of vials is not an appropriate way to conduct a stability study and should not be used to extrapolate Beyond Use Dates. Stability studies are typically elaborately designed and require testing multiple vials at specified periods of time for potency and microbiology profile, while also examining the effects of storage containers and conditions (such as temperature and humidity). Accordingly, it appears that the Beyond Use Date for this preparation was incorrectly determined and extended.

**b. Unknown Storage Conditions**

13. It appears that the State of Texas has failed to create and maintain appropriate records of the storage conditions necessary to ensure that the vials of pentobarbital are undamaged, usable, and safe.

14. Proper procedure requires pharmacists to maintain records of storage conditions for each compounded sterile product. Storage conditions must be continuously monitored and recorded on a regular basis until the product is used. Poor storage conditions frequently cause degradation and contamination of drug products. Pentobarbital and other compounded sterile products need to be kept in proper storage conditions or they can become damaged, unusable, and unsafe. The same is true for pentobarbital's active pharmaceutical ingredient powder, which is used to prepare the injectable product. Typically, in the pharmacy a temperature log is maintained to show compliance with storage temperature requirements. Any excursions outside of the required temperature range are recorded and

must be explained. Assessment is then performed on products that were exposed to suboptimal storage conditions to determine whether they should be used or discarded.

15. According to the records provided for my review, the storage conditions for the compounded pentobarbital injections intended for Mr. Swearingen's execution do not appear to have been monitored or recorded. Accordingly, the storage conditions for these vials are entirely unknown. It is also unknown how the drugs and active ingredients were transferred to the state of Texas, and whether such transfer took place with appropriate handling and under the appropriate temperature-controlled conditions.

16. Without testing the individual vials intended for Mr. Swearingen's execution, there is also no way of knowing whether these vials have become degraded or contaminated due to improper storage.

### III. Lack of Compounding Information Regarding the Preparation of the Pentobarbital Injection Raises Concerns Due to the Chemical and Physical Properties of Pentobarbital Sodium and the Complexity of the Compounding Procedure

17. It appears that the State of Texas has not made available records of the method used to compound the pentobarbital to be used to execute Mr. Swearingen. Accordingly, it is not possible to confirm that the vials were properly prepared.

18. The process for compounding pentobarbital is complex. It is typically performed in one of two ways.

19. First, pursuant to the drug monograph listed in ASHP's Handbook of Injectable Drugs, a commercially prepared injection of pentobarbital 50 mg/mL (trade name Nembutal, AHFS classification 28:24.04) is prepared as a mixture containing pentobarbital sodium, propylene glycol 40% v/v, and alcohol 10% . Additional ingredients are used to stabilize the solution and to produce the final pH of 9.5.

20. There are many considerations when preparing sodium pentobarbital injection in a compounding pharmacy setting per USP <797> under 503a regulations. Pentobarbital sodium powder Active Pharmaceutical Ingredient (API) is not water soluble. Additionally, aqueous solutions of pentobarbital sodium are also not stable per AHFS reference. According to one formulation recipe listed in the literature, the API has to be dissolved in water but the solution must be alkalinized using sodium

hydroxide pellets to bring the pH to 12. Otherwise the drug will produce a suspension rather than a solution, meaning that some of the particles will settle out of the mixture. A suspension is not suitable for parenteral use. Hydrochloric acid is then added to the solution to bring the pH back down to around 9.8 (until pentobarbital just barely stays in solution). Propylene glycol needs to be added (40% v/v) and alcohol is then also added. The drug is then filtered using 0.22 micron filter to assure sterility. Any change in pH can cause precipitation and a change in the potency of this drug solution. This preparation closely mimics the commercial formulation of the drug.

21. Second, pentobarbital may be compounded by dissolving the bulk powder in alcohol initially, and then adding polypropylene glycol and water while adjusting the pH, in order to keep the drug in solution without precipitation.[ii]

22. As the two formulation recipes described above illustrate, the preparation of this compounded sterile product is complex, and involves number of ingredients and chemical adjustments. No information regarding the process used to compound the pentobarbital to be used in Mr. Swearingen's execution has been made available, making it impossible to confirm the adequacy of the compounding procedure used, the suitability of the inactive ingredients and their expiration dates, the ingredients and amounts/concentrations used, and whether any adjustments that were made to assure that the medication was prepared correctly and thus will produce desired effect.

23. Deviations from appropriate procedure can significantly impact the efficacy and safety of pentobarbital. For example, if there is a shift in concentration of one of the ingredients (perhaps due to the improper storage conditions), this can lead to the formation of precipitant and oxidation of the product often indicated by a colour change of the solution, which will also impact potency of the drug.

24. In general, compounding logs must be maintained by the compounding pharmacy and all the details listed above should be recorded to assure the traceability and quality of the compounded product. Such logs must include the criteria used to determine the Beyond Use Date; a master work sheet containing storage requirements; the criteria used to determine the beyond-use date; and documentation of performance of quality control procedures.[iii] Without access to these

logs, it is not possible to verify that the vials of pentobarbital to be used to execute Mr. Swearingen were properly prepared.

### IV. Potency and Quality Concerns Arising from Improper Compounding Practices and Lack of Information on Potency Analysis

#### a. Lack of Important Information Regarding the Compounding and Individual Vial Testing Prior to Use

25. I understand that the State of Texas tests only one vial per order of compounded pentobarbital for potency, sterility, and the presence of contaminants. Here, based on records provided by the state of Texas to the attorneys who represent Mr. Swearingen, I understand that potency testing was conducted on two occasions on a single vial of compounded pentobarbital in the state's possession, and used to extrapolate the potency of the other untested vials over time. This is concerning, because I have seen no evidence to indicate that the drug compound is prepared as one uniform batch. Accordingly, the one vial tested may not be representative of the vial used to execute Mr. Swearingen.

26. Moreover, I understand that the State of Texas performs this test only at the time it receives the drug from its supplier but does not re-test the drug before it is used for lethal injection. This is concerning, because the quality and potency of the drug may degrade over time. Indeed, no formulation records were provided indicating how the drug was prepared or noting which ingredients were used, what their expiry was, in what quantities the ingredients were used, whether pH adjustments were made, what the final pH is, and if any additional ingredients were used that could potentially cause the drug to degrade with time.

27. Potency is the amount of the drug required to produce a specific effect. If the pentobarbital used in Mr. Swearingen's execution is sub-potent, Mr. Swearingen will not receive the intended dosage required to cause death. Sterility can be defined as the freedom from the presence of viable microorganisms. The presence of microorganisms and contaminants can cause significant changes to the composition and potency of the drug.

28. Laboratory testing sheets appear to reflect testing conducted on two separate occasions for vials within the same batch. First, on or about June 22, 2018, an unknown laboratory tested one vial of the batch of compounded pentobarbital in the state of Texas' possession. The potency was 98.0%.

29. Second, on May 3, 2019, an unknown laboratory tested one vial of the same batch of compounded pentobarbital for potency. The potency was 98.8%. Microbiology tests determining the presence of bacterial endotoxins were not performed at this time. Without testing of each of the individual vials intended for Mr. Swearingen's execution, there is no way of knowing whether these vials are of adequate potency to cause death. Testing one vial in an order months before use provides no information regarding the potency, sterility, or contamination of other vials within that order. This problem is compounded here, because the last test was performed on May 3, 2019, more than 3 months ago. It is unclear whether the vial that was tested during these two tests will be the same vial to be used in Mr. Swearingen's execution. It is also unclear whether the state of Texas intends to use a completely different vial or even vials from the same order in Mr. Swearingen's execution.

30. When pharmacies under 503a regulations prepare any compounded sterile products, there is no mandated testing to determine that the product has the potency as predicted. The lack of mandated testing for compounding pharmacies differs from the standards required for pharmaceutical manufacturers and 503b outsourcing facilities, where quality assurance testing must take place. The manufacturer typically tests the potency of API prior to use, and then performs potency assay throughout the batch to assure that the medication provides uniform concentration.

31. Here, the state of Texas has provided no evidence that this type of individualized vial testing took place at the time that the products were compounded, and no individualized testing appears to have been conducted in the fourteen months following the compounding of this batch. Without access to the compounding records kept by the pharmacy to document how the drug was prepared, and without knowing whether individual testing took place at the time of compounding, it is impossible to know whether the drugs intended for use in Mr. Swearingen's execution were correctly made, contain the appropriate amount of active ingredient, or will be sufficient to cause death.

    b. **Lack of Information to be Reviewed Regarding the Quality Control Testing of the Prepared Vials and Incomplete Testing Performed**

32. The validity of the microbiology and chemistry test results provided for the batch of drugs intended for Mr. Swearingen's execution is extremely difficult to evaluate due to lack of details. The information provided for review by the state of Texas was tremendously limited.

33.     The USP monograph for pentobarbital injection USP dictates that the compounded product should undergo visual inspection for any precipitation and discoloration. However, it is not clear whether such visual inspection took place on any of the vials intended for Mr. Swearingen's execution. Furthermore, pH testing should be performed, in addition to the results reported. It is not clear whether any pH testing was performed on the drugs intended for Mr. Swearingen's execution.

34.     Issues with precipitation, discoloration, and PH can all have negative impact on the potency of compounded pentobarbital, potentially rendering the drug insufficient to cause death.

   c. **Use of Possibly Expired Active Ingredients and Lack of Testing of Ingredients**

35.     Based on the evidence I have reviewed, it is possible that the pentobarbital to be used to execute Mr. Swearingen was prepared using expired ingredients.

36.     The compounded pentobarbital prepared for the state of Texas was made by one or more anonymous compounding pharmacies. According to news reports, the bulk active pharmaceutical ingredient (API) used to make these products were obtained by the state in November of 2014.[iv] News reports state that the state of Texas transferred small quantities of the ingredient to the anonymous pharmacy or pharmacies for compounding into an injectable solution.[v]

37.     In this instance, the origin of the API used to prepare the vials intended for Mr. Swearingen's execution is not clear. If the vials were prepared using the same batch of API obtained by the state of Texas in 2014 and used in previous executions, this API would be at least five years old.

38.     Furthermore, regardless of whether the ingredients used to prepare the vials intended for Mr. Swearingen's execution were sourced by the state of Texas or in some other fashion, questions still remain about the purity and stability of these ingredients. 22 Tex. Admin. Code § 291.133 requires that the ingredients used in sterile compounding be of USP/NF grade, or chemical grade if USP/NF grade substances are not available. It further states that the ingredients must be purchased from a FDA-registered facility, or if not purchased from a FDA-registered facility, the pharmacist must establish purity and stability by obtaining a Certificate of Analysis from the supplier and compare the monograph of drugs in a similar class to the Certificate of Analysis.

39.     Here, the state of Texas has not provided any such Certificate of Analysis and has been unable to confirm whether the drug ingredients were obtained from a FDA-registered facility. Without

this important information, it is impossible to know whether the ingredients used to prepare the vials intended for Mr. Swearingen's execution are of sufficient potency and stability to cause death.

### V: There is a Risk That the Pentobarbital Intended for Mr. Swearingen's Execution Will Not Cause His Death

40. Poor pharmacy practices and a lack of transparency create the substantial risk that the drugs that the state of Texas intends to use in Mr. Swearingen's execution are not of the appropriate quality and potency to cause death.

41. The potency of a drug is contingent on a number of factors, including the quality of the active pharmaceutical ingredient, conditions and practices of the compounding pharmacy, conditions of the testing laboratory, conditions and manner of storage and handling, and the time between compounding and use.

42. Here, knowledge gaps and potential improper pharmacy practices create the risk that these drugs may not be potent. The quality and origin of the active ingredients used to compound these drugs are unknown, and the information that is available may suggest that these ingredients are several years old and possibly subpotent. The drugs were assigned Beyond Use Dates in contradiction with USP <797> standards, and have been handled, transferred, and stored under unknown conditions.

43. Testing the individual vials intended in Mr. Swearingen's execution for stability, sterility, and contaminants will determine whether the drugs have the appropriate potency to cause death.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15 day of August 2019.

*Michaela M. Almgren*
Dr. Michaela Almgren

---

[i] Chapter 797, Pharmacy Compounding--Sterile Preparations of the USP/NF.
[ii] https://www.medschool.umaryland.edu/media/SOM/Offices-of-the-Dean/OAWA/docs/non-usp-grade-pentobarbital-policy.pdf
[iii] 22 Tex. Admin. Code § 291.133
[iv] https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-as-they-died-this-is-how-texas
[v] https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-as-they-died-this-is-how-texas

# Michaela M. Almgren, PharmD, MS

161 Wilmont Drive
Lexington, SC 29072
almgren@cop.sc.edu
(803) 622-5231

## EDUCATION

**Doctor of Pharmacy, 2010** *Magna Cum Laude*
South Carolina College of Pharmacy, University of South Carolina, Columbia, SC

**Master of Science in Pharmacy, 2010** *Magna Cum Laude*
**Pharmaceutical Chemistry (Industrial Pharmacy focus)**
University of Florida, Gainesville, FL

**Bachelor of Science, 1997** *Magna Cum Laude, Graduated with Honors*
**Major: Biology, Chemistry**
Columbia College of South Carolina, Columbia, SC

## EMPLOYMENT HISTORY AND EXPERIENCE

**Outsourcing Pharmacist and Clinical Specialist**
**Nephron Pharmaceuticals Company, West Columbia SC**
- Perform duties of an outsourcing pharmacist.
- Involved in regulatory department performing research of current regulations, review of ANDAs and other FDA submissions, as well as preparation of responses to FDA requests.

**Clinical Assistant Professor, College of Pharmacy**
**University of South Carolina, Columbia, SC**
**August 2013 -- present**
- Teach basic and advanced institutional pharmacy practice focused laboratory courses to students in the second year of pharmacy education. Typical class size is 110 students.
- Developed, completely designed and implemented training course content for basic and advanced sterile compounding training with focus on USP chapters 797 and 800, and introduction to current institutional pharmacy practice.
- Developed and implemented 6-hour module for student training in 503A versus 503B environment regulations to emphasize critical differences in cGMP (per 21 CFR 210 and 211) versus USP standard requirements.
- Consulting pharmacist, performing duties of a permit holder (Non-dispensing pharmacy permit # 4956) and fully responsible for maintaining the facility, inventory control and daily operations.
- Developed and implemented ACPE accredited course titled Basic Aseptic Technique for Kennedy Pharmacy Innovation Center, offering pharmacists and pharmacy technicians 23.5 hours of continuing education credit composed of two-day live hands-on course as well as home study.

**Staff Pharmacist**
**Prisma Health Richland Hospital Pharmacy, Columbia SC**
**August 2013 – August 2018**
- Perform duties of staff pharmacist—review orders, medication utilization review, order entry, preparation and checking of sterile and non-sterile medication preparations.
- Medication history pharmacist—collect medication history via patient interviews, perform medication reconciliation, clinical consultations, patient education, medication use evaluation, and medication history consults.
- Maintain USC college of pharmacy practice site.

**Assistant Professor of Clinical and Pharmaceutical Sciences**
**South University School of Pharmacy, Columbia, SC**
**May 2010 -- August 2013**
- Taught lectures in large number of courses in pharmaceutical sciences as well as pharmacy practice in distance education setting, managing two classrooms and collaborating with faculty members located in Savannah, GA. Typical class size was 80 students in the Columbia campus classroom, with 90 additional students at the distant site in Savannah.
- Initiated student chapter of Student Society of Health Systems Pharmacists and guided students to the ASHP national recognition of the chapter.

**Adjunct Faculty, University of Florida Graduate Distance Programs**
**University of Florida, School of Pharmacy**
**January 2011-- May 2014**
- Supported distance education learning materials to be delivered via Adobe Connect and other platforms for on-line learning, led chat sessions, communicate via email.
- Graded assignments, tests and presentations.

**Hospital Pharmacy Intern**
**Lexington Medical Center, West Columbia, SC**
**June 2008 - May 2010**
- Prepared IVs, interpreted and prepared orders per medications orders in CPOE.
- Ensured proper control and dispensing of narcotics.
- Interacted with clinical pharmacists, physicians, and nurses regarding drug therapy.
- Compounded a wide variety of specialty preparations including chemotherapy and TPN.

**Senior Pharmaceutical Formulation Scientist**
**Pfizer Inc., Greenwood SC**
**December 2005 – August 2006**
- Worked with formulation team in determining of yields (actual and theoretical), performed batch production record verification, ingredient review, and conditional quality releases, all per company's SOPs (standard operating procedures) and following guidance of cGMPs.
- Developed and validated methods for analytical testing of raw materials and finished products for QC department to test for identity, purity and strength to meet quality standards set by FDA and USP.

**Senior Pharmaceutical Chemist**
**GlaxoSmithKline, Aiken SC**

- Conducted quality control testing of finished products (liquids, gels, solid dosage, and wet granulation products) and raw materials
- Extremely familiar with laboratory testing ranging from physical testing (friability, LOD, particle size, disintegration, extractions, dissolution testing, etc.) to wet chemistry analysis (titrations, KF, etc.).
- Specialized in more complex testing using advanced technology and instrumentation (GC, HPLC, TLC, NMR, FTIR, TOC, atomic analyzer, etc.)
- Very familiar with USP, BP, FDA and EP guidelines and methodology for pharmaceutical quality testing.

# CURRENT LICENSING AND CERITICIFATIONS

- Licensed Pharmacist in SC, license #13173
- Licensed Pharmacist in NC, license #21809
- Licensed Pharmacist in HI, license #3308
- APhA Certified pharmacist immunizer
- CITI Program IRB Members Basic Course
- American Heart Association CPR and BLS certification
- Certificate of completion from Pharmacy Compounding seminar at PCCA, Houston TX
- Certificate from Critical Point Sterile Compounding boot camp, Denver CO
- Certified by American Technical Institute in method development using GC-MS, GC, and HPLC

# FACULTY APPOINTMENTS AND TEACHING EXPERIENCE

### DIDACTIC TEACHING EXPERIENCE

**Clinical Assistant Professor in Department of Clinical Pharmacy and Outcomes Sciences, University of South Carolina, Columbia SC**
**August 2013 to present**
- PHMY 790: Pharmacy Skills Laboratory III: Introduction to Health-Systems Pharmacy I (1 credit laboratory course, course coordinator)
- PHMY 791: Pharmacy Skills Laboratory IV: Advanced Health System Pharmacy Practice (1 credit laboratory course, course coordinator)
- PHMY 710: Biopharmaceutics and Pharmacokinetics (3 credit hours, lecturer)
- PHAR 401: Introduction to Pharmacy in the United States (3 credit hours, lecturer)
- PHMY 999: Senior Seminar (1credit hour, student advisor, grader)

**KPIC Master instructor, University of South Carolina, Columbia SC**
**August 2014 to March 2015**
- Basic Aseptic Technique course, 23.5 hours of CE, Master instructor
- Advanced Aseptic Technique course 16 live hours of CE, Master instructor

**Assistant Professor of Pharmacy**
**South University School of Pharmacy, Columbia SC,**
**May 2010 to August 2013**
- PHA 4367 Integrated Sequence IV Autonomic Nervous System (Pharmacology and Pharmacotherapy lectures), 8 credit hours
- PHA 3159 Introduction to Integrated Sequence: Basic Pharmacology Modules, Medicinal Chemistry, 6 credit hours
- PHA 3107 Pharmaceutical Calculations (use of pre-recorded lectures and in-class hands-on exercises), 3 credit hours (course coordinator)
- PHA 3113 Pathophysiology I (topics include geriatrics, inflammation, cancer, HIV, immune response), 4 credit hours (course coordinator)
- PHA 3114 Pathophysiology II (topics include autonomic nervous system, wound healing, gout, RA), 4 credit hours
- PHA 3109 Microbiology and Immunology (lectures in immunology, virology), 5 credit hours
- PHA 5335 Animal Venoms and Poisons (developed and implemented this elective), 3 credit hours (course coordinator)
- PHA 5332 Applied Pharmaceutical Care II (topics including, OA, RA, BPH, ED), 4 credit hours
- PHA 4265 Integrated Sequence III Inflammation (Pharmacology and Pharmacotherapy of osteoarthritis, rheumatoid arthritis, gout, would healing, lupus), 6 credit hours
- PHA 3162 Integrated Sequence I: Introductory Pharmacology and Medicinal Chemistry, 5 credit hours
- PHA 4212 Pharmacokinetics I (Implemented team-based learning), 4 credit hours
- PHA 4228 Pharmacokinetics II (Implemented team-based learning), 4 credit hours
- PHA 3135 Integrated Pharmacy Skills Lab I, 3 credit hours
- PHA 3136 Integrated Pharmacy Skills Lab II, 3 credit hours
- PHA 3137 Integrated Pharmacy Skills Lab III, 3 credit hours
- PHA 4238 Integrated Pharmacy Skills Lab IV, 3 credit hours
- Longitudinal Pharmacy Practice Experiences I – V: PHA 3135, 3163, 4266, 4369, 5330, 1 credit hour, course coordinator

**Adjunct Faculty, UFL Graduate Distance Programs**
**University of Florida, School of Pharmacy, January 2012-present**
- Medicinal Chemistry I
- Fundamentals of Medicinal Chemistry, course coordinator
- Herbal and Dietary Supplements

**EXPERIENTIALTEACHING EXPERIENCE**

**Advanced Pharmacy Practice Experience (APPE) Academic Rotation—South Carolina College of Pharmacy,** Preceptor for PharmD students.

**Advanced Pharmacy Practice Experience (APPE) Academic Rotation—South University School of Pharmacy,** Preceptor for PharmD students.

### OTHER TEACHING EXPERIENCE:
- Provide CE and CME lectures to pharmacists, nurses and physicians
- Patient education lectures
- HPLC training for laboratory technicians
- Certificate training for GC/MS analysts
- Quality control team training on cGMPs

## COLLEGE OF PHARMACY COMITTEES

- South University SOP Curriculum Committee, member, chair
- South University SOP Curriculum Subcommittee for Pharmaceutical Calculations course advisory member
- South University SOP Committee for Professional Outreach, member
- South University SOP Technology Committee, member
- South University SOP ACPE Self-Study and Assessment Committee, member
- South University SOP Admissions Committee, member
- University of South Carolina COP Continuing Education Committee, member
- University of South Carolina COP Search Committee for Lab assistant, chair
- University of South Carolina COP Curriculum Committee, member

## INVITED LECTURES AND PRESENTATIONS

M. Almgren. Medication Safety of Hazardous Drugs: Can We All Be Safe? 1.0 credit hour ACPE accredited CE presentation at SCSHP Fall Meeting in Columbia SC, October 17th 2018.

M. Almgren. Review of Sterile Compounding per USP 797. 1.0 credit hour ACPE accredited CE presentation at SCSHP Fall Meeting in Columbia SC, October 17th 2018.

M. Almgren. Sterile Compounding and Implementation of USP Chapter 797: Where we came from, where we are and where we might be headed. 1.0 ACPE Live CE accreditation awarded. SCSHP Annual Meeting, March 2015, Hilton Head Island, SC.

M. Almgren. Pharmacy school pathways.  CAPPS USC student chapter speaker, April 2015.

M. Almgren. Importance of unification of performance protocols for CSTD testing per NIOSH. November 7, 2016, Cincinnati, OH.  NIOSH Public Comment meeting, invited speaker.

M. Almgren. Important role of CSTD utilization in compounding of hazardous materials to enhance protection of the compounder. 2016 ASHP Midyear, Las Vegas. Hazardous Drug Task Force speaker for USP 800 implementation.

M. Almgren. Current Status and Future Trends in Sterile Compounding as Defined by USP Chapters 797 and 800. 1.0 ACPE Live CE accreditation awarded. SCSHP Annual Meeting March 11-13, 2018, Hilton Head Island, SC.

M. Almgren. Who wants to be a pharmacist? CAPPS USC student chapter speaker, April 11th, 2018.

## PEER-REVIEWED PUBLICATIONS

Almgren M., Cooper C., Maxwell W., Baker J. Instruction on compounded sterile preparations at U.S. schools of pharmacy—a ten year follow up study. American Journal of Health System Pharmacy, 2018 Jun 15; 75 (12): 845-847.

Textbook chapter accepted in the next edition: Almgren M. "Pharmaceutical Calculations" In: Sutton S. Scott. *McGraw Hill's NAPLEX Review Guide*. 3rd Edition.

Textbook chapter accepted in the next edition: Almgren M. "Sterile Compounding Regulations" In: Sutton S. Scott. *McGraw Hill's NAPLEX Review Guide*. 3rd Edition.

Karyn I. Cotta, Samit Shah, PhD, RPh, MBA, Michaela M. Almgren, PharmD, MS, Lilia Z. Macías-Moriarity, PhD, MPH, Vicky Mody. Effectiveness of flipped classroom instructional model in teaching pharmaceutical calculations. *Currents in Pharmacy Teaching and Learning*. 2016. Volume 8, Issue 5, Pages 646–653.

Braga S, Almgren M. Complementary Therapies in Cystic Fibrosis: nutritional supplements and herbal products. *Journal of Pharmacy Practice*. 2013 Feb;26(1):14-7.

Wynn W, Almgren M, Stroman R, Clark K. Pharmacist's Toolbox for Smoking Cessation. *Journal of Pharmacy Practice.* 2012 Dec;25(6):591-9.

## POSTERS WITH ABSTRACTS

Almgren M, Maxwell W, Grant A, Hembree H, Shah A. Disability and Accommodations in Pharmacy Practice and Education. 2019 AACP Annual Meeting, Chicago 2019. Abstract #53.

Cooper C., Almgren M., Maxwell W., Baker J. Instruction on compounded sterile preparations at US pharmacy schools. 2018 SCSHP Annual Meeting poster session, Hilton Head Island, SC.

Cooper C., Almgren M. Maxwell W., Baker J. Instruction on compounded sterile preparations at US pharmacy schools. Poster presentation at 2017 ASHP Midyear in Orlando, FL, poster # 368.

Parth Parikh, PharmD. Candidate; Paul Philavong, PharmD Candidate, Sam McCallum, PharmD Candidate, Nhung Nguyen, PharmD Candidate; Michaela Almgren, PharmD, MS. Assessing Microbial Growth Rates of Sterile Versus Non-Sterile Gloves Used During Sterile Compounding. 2017 SCSHP Annual Meeting Hilton Head, SC, poster session.

Cotta K, Almgren M. "Effectiveness of Blended Teaching Method for Pharmaceutical Calculations." Poster presentation at 2012 AACP Annual meeting in Kissimmee FL.

Almgren M., Clark K. "Laboratory Exercise to Enhance Integration and Application of Basic Sciences to Pharmacy Practice in Students." Poster presentation at 2012 AACP Annual meeting in Kissimmee FL.

## Peer Review/Editorial Boards/Editorships for Journals

Peer Reviewer for The Joint Commission Journal on Quality and Patient Safety
Reviewer and member of editorial board of Alternative Medicine Studies Journal
Reviewer for Journal of Dietary Supplements
Reviewer for Natural Standard Research Collaboration
Reviewer for Currents in Pharmacy Teaching and Learning

## PROFESSIONAL AFFILIATIONS

American Pharmacist Association (APhA), 2006-2014
American Society of Consultant Pharmacists (ASCP), 2008-2013
American Society of Health-System Pharmacists (ASHP), 2008-present
- Pain management SIG 2011-2013

SCPhA, member 2006-2017
- Professional Affairs committee 2010-2011, 2017
- Legislative Affairs Committee 2011-2012

SCSHP member 2008-present
- Education Committee 2014-2016
- Professional Affairs Committee 2015-2016
- Legislative Committee 2017-2018

AACP, member 2010-present
- Lyman Award Committee Member 2012-2013
- House of Delegates representative for USC College of Pharmacy 2017-2018
- AACP Pharmacy Practice Strategic Plan, Bylaws, and Resolutions Committee member
- AACP Audit member