IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY RAY SWEARINGEN, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | ACTION NO. H-19-3079 |
| | § | |
| BRYAN COLLIER, et al., | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
Southern District Admission No. 892308
  *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES................................................ iii

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING......1

STATEMENT OF THE ISSUES.................................................1

SUMMARY OF THE ARGUEMNT .........................................1

ARGUMENT ...........................................................................2

I.   Plaintiff's Claims Should All Be Dismissed as Untimely and as Failing to State a Claim Upon Which Relief May Be Granted...........................................................................2

    A.   The motion to dismiss standard .................................2

    B.   Count One must be dismissed. ...................................3

        i.   Count One is time barred. ...................................4

        ii.   Count One fails as a matter of law. ..............................6

    C.   Count Two must be dismissed. ...........................15

        i.   Count Two is time barred. .........................15

        ii.   Count Two fails as a matter of law...........................15

    D.   Count Three must be dismissed. ...........................17

        i.   Count Three is time barred. ...................................17

        ii.   Count Three fails as a matter of law. ..........................18

II.   The Request for Injunctive Relief Is an Impermissible Request for Mandamus Relief. ................................................19

III.   The Request for a Stay of Execution Should be Denied.................20

    A.   The stay standard .................................................21

    B.   Plaintiff fails to make a strong showing of probable success. ..................................................................22

    C.   Plaintiff fails to prove that he is likely to suffer irreparable harm...............................................................22

    D.   The balance of equities favors the State...............................29

  E.  Plaintiff has not exercised diligence. .................................... 30

CONCLUSION ........................................................................................ 32

CERTIFICATE OF SERVICE ................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................ 2, 3, 20

*Baze v. Rees*, 553 U.S. 35 (2008) ...................................................... 6, 7, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................. 2, 3

*Berry v. Epps*, 506, F.3d 402 (5th Cir. 2007) .......................................... 30

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ........................... 7, 12, 13, 14

*Gerhart v. Hayes*, 201 F.3d 646 (5th Cir. 2000) ..................................... 18

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275
   (11th Cir. 2015) ................................................................................... 4

*Glossip v. Gross*, 135 S. Ct. 2726 (2015) ......................................... 6, 7, 13

*Gomez v. U.S. Dist. Court N. Dist. Cal.*, 503 U.S. 653 (1992) ............... 32

*Harris v. Johnson*, 376 F.3d 414 (5th Cir. 2004) ........................ 30, 31, 32

*Hill v. McDonough*, 547 U.S. 573 (2006)................................... *passim*

*Kincy v. Livingston*, 173 F. App'x 341 (5th Cir. 2006)........................... 30

*Mann v. Palmer*, 713 F.3d 1306 (11th Cir. 2013) ............................. 10, 14

*McGehee v. Hutchinson*, 854 F.3d 488 (8th Cir. 2017) .......................... 13

*McIntosh v. Partridge*, 540 F.3d 315 (5th Cir. 2008).............................. 18

*Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275
   (5th Cir. 1973).................................................................................... 19

*Murphy v. Collier*, 139 S. Ct. 1457 (2019)................................................. 4

*Nelson v. Campbell*, 541 U.S. 637 (2004)................................................ 14

*Nken v. Holder*, 556 U.S. 418 (2009)....................................................... 21

*Norton v. Enns*, No. 2:14-CV-0040, 2014 WL 3947158
   (N.D. Tex. Aug. 12, 2014)................................................................. 19

*Powell v. Thomas*, 641 F.3d 1255 (11th Cir. 2011)................................. 17

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013)................................. 16

*Summers v. Tex. Dep't Criminal Justice*, 206 F. App'x 317
   (5th Cir. 2006)................................................................................... 30

*Tesfamichael v. Gonzales*, 411 F.3d 169 (5th Cir. 2005) ........................22

*Trottie v. Livingston*, 766 F.3d 450 (5th Cir. 2014) ...........................5, 31

*Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008)............................................4

*Waters v. Texas*, 747 F. App'x 259 (5th Cir. 2019)..................................19

*Wellons v. Comm'r Ga. Dept. Corr.*, 754 F.3d 1260
    (11th Cir. 2014) ................................................................ 10, 17

*Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017)..........................*passim*

*Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013) .....................16, 31

*Whitaker v. Livingston*, No. H-13-2901, 2016 WL 3199532
    (S.D. Tex. June 6, 2016)...................................................................23

*Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011)...................................17

*Wood v. Collier*, 678 F. App'x 248 (5th Cir. 2017) ...................2, 5, 15, 17

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016)...............................*passim*

*Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015)..........................*passim*

## Statutes

28 U.S.C. § 2244(b)...................................................................................14

28 U.S.C. § 2244(d)(1) .............................................................................14

42 U.S.C. § 1983 ........................................................................................1

Miss. Code Ann. § 99-19-51......................................................................13

Miss. Code Ann. § 99-19-51(4)..................................................................13

Okla. Stat. tit. 22, § 1014(d)......................................................................13

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ........................................4

Tex. Code Crim. Proc. art. 43.14.........................................................14, 17

Tex. Code Crim. Proc. art. 43.24..............................................................17

Utah Code Ann. § 77-18-5.5(2).................................................................13

## Other Authorities

Act of June 16, 1991, 72nd Leg., R.S., ch. 652, § 11, 1991 Tex. Sess. Law
    Serv. Ch. 652......................................................................................17

Act of June 18, 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws vol.
    2, p.588............................................................................................17

## Rules

Fed. R. Civ. P. 12(b)(6) .............................................................................1

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

This is civil-rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff is a Texas death row inmate scheduled to be executed August 21, 2019, and he challenges various components of Texas's execution protocol, primarily the use of compounded pentobarbital as a lethal injectant. *See generally* Compl., ECF No. 1. Defendants are various members or employees of the Texas Department of Criminal Justice (TDCJ). TDCJ respectfully moves for dismissal of Plaintiff's complaint as the claims are barred by limitations and relief may not be granted on them, *see* Fed. R. Civ. P. 12(b)(6), and also asks that the Court deny Plaintiff's requests for injunctive relief, including a stay of execution.

## STATEMENT OF THE ISSUES

The Court must address whether Plaintiff's claims are barred by the applicable statute of limitations and survive a motion to dismiss for failure to state a claim, and whether Plaintiff is entitled to the injunctive relief he requests—temporarily dispossessing TDCJ of the lethal injectant it intends to use on Plaintiff and staying his execution.

## SUMMARY OF THE ARGUEMNT

Plaintiff's suit is almost identical to two others that this Court has dismissed and whose dismissals have been affirmed by the Fifth Circuit.

*See Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017); *Wood v. Collier*, 678 F. App'x 248 (5th Cir. 2017) (*Wood II*); *Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) (*Wood I*). Plaintiff's claims, like those in *Whitaker* and *Wood*, are untimely and fail to state a claim upon which relief may be granted. Given this binding authority, the same result must occur—dismissal.

As to Plaintiff's request for injunctive relief, in the form of ordering TDCJ to turn over the pentobarbital it intends to use for Plaintiff's execution to a third-party testing facility and staying his execution, the Court lacks jurisdiction to do the former because it is a request for mandamus relief, and it should not do the latter because, primarily, Plaintiff fails to make a strong showing of likely success on the merits and his suit is woefully dilatory.

## ARGUMENT

### I. Plaintiff's Claims Should All Be Dismissed as Untimely and as Failing to State a Claim Upon Which Relief May Be Granted.

#### A. The motion to dismiss standard

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although the complaint need not contain "'detailed factual allegations,'" it must provide more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B.   Count One must be dismissed.**

In Count One, Plaintiff alleges that, because TDCJ is using compounded pentobarbital beyond its appropriate "use by" date and refusing to retest it for potency and sterility, he is being subjected to cruel and unusual punishment in violation of the Eighth Amendment. Compl. 16–18. Plaintiff, as an execution alternative, first asks that TDCJ "conduct a proper test of the drugs" it plans to use in his execution. *Id.* at 18. If that is not a sufficient alternative, he requests execution by firing squad. *Id.* at 18–19.

### i.     Count One is time barred.

Method-of-execution claims are subject to a state's personal-injury statute of limitations. *Walker v. Epps*, 550 F.3d 407, 412–14 (5th Cir. 2008). Texas's personal-injury-limitations period is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). A method-of-execution claim accrues on the later of two dates: termination of direct review or when the challenged protocol was adopted.[1] *Walker*, 550 F.3d at 414–15.

Plaintiff's conviction became final more than fifteen years ago, *Swearingen v. State*, 101 S.W.3d 89 (Tex. Crim. App. 2003), as he acknowledges, Compl. 15, ¶ 86. Thus, Plaintiff must rely on a protocol enactment or change to be timely. However, TDCJ's use of compounded pentobarbital began in September 2013, *Whitaker*, 862 F.3d at 494, a fact Plaintiff concedes, Compl. 5, ¶ 20. But even that is not the appropriate

---

[1]     Plaintiff notes that TDCJ's current execution protocol was adopted in April 2019. Compl. 4, ¶ 16. The only change from the prior protocol, adopted in July 2012, is that TDCJ chaplains are no longer permitted into the execution chamber. *Compare* Defs.' Ex. 1, *with* Defs.' Ex. 2; *see also Murphy v. Collier*, 139 S. Ct. 1457, 1476 (2019) (Kavanaugh, J., respecting grant of stay). Thus, the new protocol is not the relevant accrual date for any of Plaintiff's claims because "a claim that accrues by virtue of a substantial change in a state's execution protocol is limited to the particular part of the protocol that changed." *Whitaker*, 862 F.3d at 495 (quoting *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280–81 (11th Cir. 2015)). That is because "a substantial change to one aspect of a state's execution protocol does not allow a prisoner whose complaint would otherwise be time-barred to make a 'wholesale challenge' to the state's protocol." *Id.* (quoting *Gissendaner*, 779 F.3d at 1281).

4

measure because the change from manufactured to compounded pentobarbital was not substantial enough change to trigger a new accrual date. *Whitaker*, 862 F.3d at 494–96. The more appropriate accrual date is July 2012, when TDCJ's execution protocol went from three drugs to just one—pentobarbital.[2] *Trottie v. Livingston*, 766 F.3d 450, 452 n.1 (5th Cir. 2014). In any event, regardless of the protocol accrual date, Plaintiff is untimely.

Indeed, Plaintiff's claim mirrors that in *Whitaker*—"that the failure to conduct additional testing of the compounded pentobarbital (the execution drug), use of the compounded pentobarbital after its 'Beyond Use Date' ('BUD'), and the absence of other appropriate safeguards violate the Eighth and Fourteenth Amendments." *Whitaker*, 862 F.3d at 493. Had statute of limitations been raised on appeal, the claims "regarding retesting and the BUD of the compounded pentobarbital, would [have] be[en] time-barred." *Id*. at 496. The issue was, however, raised in *Wood II*, where the Fifth Circuit affirmed the dismissal of a nearly identical claim "as time barred." *Wood II*, 678 F. App'x at 250.

---

[2]     Although this may be the more appropriate accrual date, Defendants do not concede that the switch from three drugs to one was substantial enough to generate a new accrual date.

Thus, Count One, like its counterparts in *Whitaker* and *Wood II*, is untimely.

### ii.    Count One fails as a matter of law.

By requesting additional drug testing, Plaintiff implicitly concedes that a single, large dose of pentobarbital administered intravenously will result in a humane death. His complaint is therefore focused on the creation of an injectable solution of that drug, the compounding process, and its later storage and testing. Compl. 5–15, 17–18.

To make out an Eighth Amendment, method-of-execution claim, an inmate must establish that the chosen method creates "a risk that is *'sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion)). This requires showing "'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). An inmate must also provide a "'feasible, readily implemented'" execution-method alternative that is not "'slightly or marginally safer,'" but "significantly reduce[s] a

substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 51–52); *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) ("[W]here (as here) the question is whether the State's chosen method of execution cruelly superadds pain to the death sentence, a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason.").

Applying the minimal pleading standards to method-of-execution claims

> requires . . . prisoners to plead more than just a hypothetical possibility that an execution *could* go wrong, resulting in severe pain to the prisoner. The Eighth Amendment prohibits an "'objectively intolerable risk'" of pain, rather than "simply the possibility of pain." . . . "Some risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure." But "the Constitution does not demand the avoidance of all risk of pain in carrying out executions.' Instead, the Eighth Amendment requires that the prisoners show the intended protocol is "'*sure or very likely* to cause serious illness and needless suffering.'"

*Zink v. Lombardi*, 783 F.3d 1089, 1098–99 (8th Cir. 2015) (en banc) (internal citations omitted) (quoting *Baze*, 553 U.S. at 47, 50, 52, 61–62).

Binding precedent requires dismissal of Count One for failure to state a claim. In *Whitaker*, like here, the plaintiffs claimed "that the

single test of the execution drugs conducted before delivery to TDCJ presents a substantial risk of serious harm because 'this lack of information and testing makes it impossible to determine to what extent the compounded pentobarbital has degraded and what the risks to the inmate might be.'" *Whitaker*, 862 F.3d at 499. But "[i]f pleading hypothetical risks was insufficient to state a claim[,] . . . then the claim that additional testing is required to identify an otherwise unknown risk is surely insufficient." *Id*. A plaintiff "must make factual allegations as to the substantial risk of severe pain instead of pleading ignorance." *Id*.

Further, claims "that the BUD assigned to the drug by TDCJ 'is not supported by the relevant provisions of the [United States Pharmacopeia], and in fact, extends far beyond the recommended BUD[,]'" which supposedly "'raises grave concerns about potency, sterility, and stability of the pentobarbital,'" "is the type of 'speculation that the current protocol carries a substantial risk of severe pain' that is insufficient even at the motion-to-dismiss stage." *Whitaker*, 862 F.3d at 499 (alteration in original) (quoting *Zink*, 783 F.3d at 1101).

Additionally, in *Wood I*, like here, the plaintiffs asserted that there was "a risk that the drug might fail, and thus re-testing for one [inmate]

8

and not another impinges upon the Eighth Amendment." *Wood I*, 836 F.3d at 540. Albeit in the context of affirming the denial of a stay of execution, the Fifth Circuit found this claim wanting:

> The reality is that pentobarbital, when used as the sole drug in a single-drug protocol, has realized no such risk. The prisoners cannot avoid the facts that: (1) the district court found that at least thirty-two executions in Texas have utilized the single-drug compounded pentobarbital protocol without incident and, (2) when pentobarbital is the sole drug used to execute, unconsciousness necessarily precedes death, effectively obviating the problem of conscious pain and suffering that was oft cited as a risk of the "three-drug cocktail." Rather, relying on conjecture regarding the drugs' beyond-use dates and compounding, the prisoners urge only that "[t]esting the compounded pentobarbital shortly before its use ensures the prisoner will not suffer severe pain . . . ." But this assertion fails to reach the Eighth Amendment bar on unnecessarily severe pain that is sure, very likely, and imminent. . . .
>
> [T]he inescapable reality is that these prisoners have not demonstrated that a failure to retest brings the risk of unnecessary pain forbidden by the Eighth Amendment.

*Id.* (first alteration in original) (footnotes omitted).

Plaintiff's complaints of what *might* happen, like those in *Whitaker* and *Wood I*, are all highly speculative and based on unknowns. *See, e.g.*, Compl. 6, ¶ 26 ("[c]ompounding pharmacies *often* lack the infrastructure" (emphasis added); *id.* at 7, ¶ 26 ("*if* the pentobarbital . . . is sub-potent" (emphasis added); *id.* at 8, ¶ 42 ("[c]ompounded pentobarbital that has

surpassed its recommended BUD has a high *risk* of improper potency"
(emphasis added)). Defendants are therefore entitled to the same relief
they received in *Whitaker* and *Wood I*—dismissal of Count One as
Plaintiff has failed to adequately plead an Eighth Amendment claim,
specifically the first substantive element of the *Baze-Glossip* standard.
*See also Zink*, 783 F.3d at 1101 ("[D]escriptions of hypothetical situations
in which a potential flaw in the production of pentobarbital or in the
lethal-injection protocol . . . . is insufficient to state an Eighth
Amendment claim."); *Wellons v. Comm'r Ga. Dept. Corr.*, 754 F.3d 1260,
1265 (11th Cir. 2014) ("Wellons's argument that the compounded
pentobarbital may be defective or the personnel administering the
execution may be untrained is insufficient to establish a substantial
likelihood of success on the merits of his Eighth Amendment claim.");
*Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) ("The Supreme
Court has rejected the notion that the absence of approval by the
Administration is sufficient to establish a substantial risk of severe
pain.").

Moreover, even if the harm Plaintiff speculates were to occur,
nothing suggests "it would be more than an isolated incident." *Zink*, 783

F.3d at 1089. But that is legally insufficient because "[t]he prospect of an isolated incident does not satisfy the requirement that prisoners adequately plead a substantial risk of severe pain to survive a motion to dismiss their Eighth Amendment claim." *Id*. Thus, even accepting Plaintiff's allegations of potential pain as true, "it would amount to an 'isolated mishap' that, 'while regrettable,' would not result in an Eighth Amendment violation." *Id*. (quoting *Baze*, 553 U.S. at 50). Accordingly, Plaintiff has failed to plead a claim sufficient to survive a motion to dismiss.

In addition, "[t]he existence of . . . an alternative method of execution . . . is a necessary element of an Eighth Amendment claim, and this element—like any element of a claim—must be pleaded adequately." *Zink*, 783 F.3d at 1103. Plaintiff's first alternative "is simply to conduct a proper test of the drugs"[3] to be used in Plaintiff's execution. Compl. 18,

---

[3]    Plaintiff states that this Court "ordered" TDCJ to re-test the compounded pentobarbital to be used on the remaining *Whitaker* plaintiffs. Compl. 1, ¶ 2. He then suggests this "order" went beyond those two plaintiffs, implying that TDCJ is reneging on affirmations made to various federal courts. *Id*. ("Despite these representations to the Federal District Court and Court of Appeals in *Whitaker*, Defendants do not actually intend to retest the compounded pentobarbital to be used in [Plaintiff's] execution[.]"). The record in *Whitaker* demonstrates otherwise.

The Court did not *order* TDCJ to retest the drugs to be used on the *Whitaker* plaintiffs, TDCJ *stipulated* that it would do so, but *only* for the remaining two plaintiffs. Defendants' Response to the Court's Request for Clarification 1, *Whitaker v. Livingston*, H-13-2901, 2016 WL 3199532 (S.D. Tex. Oct. 23, 2015), ECF No. 118;

¶ 94. But that "bare-bones proposal" is deficient because Plaintiff fails to address "essential questions like" what type of tests would be "proper," when the tests should occur, who should conduct them, and whether testing results could be generated within the twenty-four or seventy-two hour "use by" limits Plaintiff suggests are applicable to injectable solutions of compounded pentobarbital. *Bucklew*, 139 S. Ct. at 1129. This paucity of information renders his claim legally inadequate. *See id.* (finding unacceptable an alternative proposal that failed to address "how nitrogen gas should be administered . . . ; in what concentration . . . ; how quickly and for how long it should be introduced; or how the State might ensure the safety of the execution"). Ultimately, Plaintiff "merely advance[s] the notion that there are [compounded drugs] that could be administered with appropriate safeguards." *Whitaker*, 862 F.3d at 499. But that allegation "is little more than a concession that there are constitutional ways for TDCJ to carry out

---

*see Wood I*, 836 F.3d at 540 ("[TDCJ's] *decision* to re-test mooted the case[.]" (emphasis added)). But TDCJ refused to so stipulate for the *Wood* plaintiffs, and the Fifth Circuit agreed that it was not constitutionally compelled to do so. *Wood I*, 836 F.3d at 540–41 ("The strategic decision of [TDCJ] to re-test in one case, in the context of an ever-changing array of suits attacking its use of capital punishment from all angles, is within the discretion inherent in the challenge made here."). Thus, TDCJ has not violated any "order" of any court, nor backtracked from any assertions made to those courts.

executions[,]" not a "factual contention[] that th[is] alternative[] 'significantly reduce[s] a substantial risk of severe pain.'" *Id*. (quoting *Glossip*, 135 S. Ct. at 2737).

This same failure affects Plaintiff's second alternative—a firing squad. Compl. 18–19, ¶ 95. Given the suit's nascency, Plaintiff cannot prove that TDCJ can carry out his death by firing squad "relatively easily and reasonably quickly," *Bucklew*, 139 S. Ct. at 1129 (quoting *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017)), such that it would not interrupt Plaintiff's current execution date. He also has not provided "sufficient[] detail[]" to implement death by firing squad, like the location it is to occur, the personnel to be used, or how TDCJ can conceal the identities of the execution team while still ensuring the method's efficacy within constitutional bounds. *Id*. Nor has Plaintiff "point[ed] to a well-established protocol in another State as a potentially viable option." *Id*. at 1128.[4] At bottom, his second alternative is a conclusory assertion with

---

[4]    Plaintiff points to two states that permit the use of a firing squad as a method of execution. Compl. 18, ¶ 95 (Oklahoma and Utah). There is a third. Miss. Code Ann. § 99-19-51. But none make it the primary method of execution. Miss. Code Ann. § 99-19-51(4); Okla. Stat. tit. 22, § 1014(d) (fourth option); Utah Code Ann. § 77-18-5.5(2) (second option). Given this, Plaintiff fails to prove that any of these states have up-to-date firing squad protocols such that TDCJ could utilize them with any confidence in the truncated time period that Plaintiff has manufactured through a dilatory filing.

insufficient specificity to avoid dismissal at the pleadings stage. *See Whitaker*, 862 F.3d at 499 ("The 'naked assertion that other methods would be constitutional, devoid of further factual enhancement, fails to state a claim under the Eighth Amendment.'" (quoting *Zink*, 783 F.3d at 1103)); *Mann*, 713 F.3d at 1315 ("Although Mann mentioned an alternative procedure in a memorandum filed in the district court, he 'failed to show that any such alternative procedure or drug is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"). For this reason and those previously presented, Count One should be dismissed as failing to state a claim upon which relief may be granted.[5]

---

[5]     Texas is statutorily required to use a lethal-injection process for executions. Tex. Code Crim. Proc. art. 43.14. Plaintiff's lack of pleading on a readily-implementable alternative, and challenging the only available lethal-injection drug, is tantamount to claiming that lethal injection is categorically impermissible and, thus, sounds in habeas. *See Bucklew*, 139 S. Ct. at 1128; *Hill v. McDonough*, 547 U.S. 573, 579 (2006); *Nelson v. Campbell*, 541 U.S. 637, 644 (2004). However, Plaintiff's categorical-habeas claim is second or successive and this Court, therefore, lacks jurisdiction over it. 28 U.S.C. § 2244(b). And any such claim is also barred by the applicable, one-year statute of limitations. § 2244(d)(1).

### C.   Count Two must be dismissed.

In Count Two, Plaintiff alleges that TDCJ's failure to disclose execution-protocol details violates (1) due process (2) the Eighth Amendment, and (3) access to courts. Compl. 20–21.

#### i.   Count Two is time barred.

This claim was raised by the *Wood* plaintiffs. *Wood II*, 678 F. App'x at 249 n.2 ("Texas's death penalty protocol injures Plaintiffs' rights under the First, Eight, and Fourteenth Amendments by failing to disclose information regarding the injection drug and by concealing information about how the executions will be performed[.]"). It was dismissed as untimely, and the dismissal upheld. *Id.* ("The district court did not err in dismissing those claims as time barred."). Although *Wood II* is unpublished, the *Whitaker* Court adopted "its reasoning and conclusions as published precedent." *Whitaker*, 862 F.3d at 495 n.7. And, as mentioned above, Plaintiff's conviction finality date does not provide a later accrual rendering any of his claims timely. *See supra* Argument I(A). Accordingly, Count Two is untimely and must be dismissed.

#### ii.   Count Two fails as a matter of law.

This claim was also raised by the *Whitaker* plaintiffs. *Whitaker*, 862 F.3d at 500 ("Count Four speaks to TDCJ's failure to disclose, or

concealment of, information about the method of execution."). The Fifth

Circuit considered, and rejected, the claim on all the constitutional bases

asserted here.

> The failure to disclose information . . . does not offend the Eighth Amendment. "Perhaps the state's secrecy masks 'a substantial risk of serious harm,' but it does not create one." "[W]e know of no case, in the context of executions, in which the Supreme Court has found a liberty interest to exist, based on the contours of the Eighth Amendment, that goes beyond what that Amendment itself protects."

> We rejected the plaintiffs' Fourteenth Amendment due process claim in *Sepulvado* [*v. Jindal*]. Disclosing information about the execution protocol "so [they] can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest." The lack of a cognizable liberty interest is fatal to the due process claim.

> . . . .

> Finally, the plaintiffs allege . . . that this lack of information interferes with their First Amendment right of access to the courts. This claim fails on the pleadings. "One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." "Plaintiffs must plead sufficient facts to create a cognizable legal claim." Because the plaintiffs have not met the pleadings standards for any of their claims, their access-to-the-courts theory necessarily fails as well.

*Id.* at 500–01 (first alteration in original) (footnotes omitted) (citations

omitted) (quoting *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013);

*Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013)); *see also Zink*,

783 F.3d at 1108–09; *Wellons*, 754 F.3d at 1267; *Williams v. Hobbs*, 658 F.3d 842, 849, 851–52 (8th Cir. 2011); *Powell v. Thomas*, 641 F.3d 1255, 1258 (11th Cir. 2011). This claim must therefore be dismissed, as it was in *Whitaker*, as failing to state a claim.

### D. Count Three must be dismissed.

In Count Three, Plaintiffs assert that, for the reasons undergirding Count One, TDCJ is violating state law prohibiting the use of "torture, or ill treatment, or unnecessary pain" in the execution of sentences and this state law violation in turn violates federal due process. Compl. 21.

### i. Count Three is time barred.

The law that places execution-policy authority with the Director has been in place since at least 1991. Act of June 16, 1991, 72nd Leg., R.S., ch. 652, § 11, 1991 Tex. Sess. Law Serv. Ch. 652 (current version at Tex. Code Crim. Proc. art. 43.14). The anti-torture, ill treatment, or unnecessary pain statute has been in place since at least 1965. Act of June 18, 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws vol. 2, p.588 (current version at Tex. Code Crim. Proc. art. 43.24). Thus, Count Three is time barred if based on protocol enactment or change grounds. *See Wood II*, 678 F. App'x 250 ("Texas last changed its death penalty protocol by switching to compounded pentobarbital in September 2013, which

serves as the latest possible accrual point for any of the Plaintiffs' causes of action."). And, as mentioned above, Plaintiff's direct appeal concluded well before two years ago. *See supra* Argument I(A). Thus, Count Three is untimely and should be dismissed.

### ii.   Count Three fails as a matter of law.

"The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with the [federal] constitutional minima." *McIntosh v. Partridge*, 540 F.3d 315, 324 (5th Cir. 2008) (alteration in original) (quoting *Gerhart v. Hayes*, 201 F.3d 646, 650 (5th Cir. 2000)).

Plaintiff has not alleged a violation of the Eighth Amendment or the Due Process Clause sufficient to overcome a motion to dismiss. *See supra* Argument I(B), II(B). Thus, regardless of whether TDCJ is violating state law—which Plaintiff fails to allege or prove is anything but coextensive with the Eighth Amendment's prohibition on cruel and unusual punishment—Plaintiff cannot show that TDCJ is violating the Constitution. His claim fails as a matter of law and must be dismissed. *Cf. Wood I*, 836 F.3d at 540 ("However one kneads the protean language of [due process] jurisprudence, the inescapable reality is that th[is]

18

prisoner[] ha[s] not demonstrated that a failure to retest brings the risk of unnecessary pain forbidden by the Eighth Amendment. Attempting to bridge this shortfall in [his] submission with [due process] language, while creative, brings an argument that is ultimately no more than word play.").

## II.   The Request for Injunctive Relief Is an Impermissible Request for Mandamus Relief.

Plaintiff asks, as a form of injunctive relief, that the Court order Defendants to turn over the pentobarbital vial or vials to be used in Plaintiff's execution "to a third party pharmaceutical testing facility" to conduct various, unenumerated tests upon it. Compl. 22, ¶ 105.

"The relief plaintiff requests, a Court order that [TDCJ] deliver the specified [pentobarbital vial or vials] to an organization plaintiff feels will subject it to [proper] testing is in the nature of . . . mandamus." *Norton v. Enns*, No. 2:14-CV-0040, 2014 WL 3947158, at *3 (N.D. Tex. Aug. 12, 2014). However, "[t]he federal district courts do not have jurisdiction to issue the writ against a state actor or agency." *Id.* (citing *Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973)); *see, e.g.*, *Waters v. Texas*, 747 F. App'x 259, 260 (5th Cir. 2019) (affirming a jurisdictional dismissal where the plaintiff sought mandamus relief

against "Texas state officials to deregister her as a Tier I sex offender").
Because Plaintiff asks for mandamus relief against state agents, this
Court has no jurisdiction to grant the request.

Assuming jurisdiction, the Court should not exercise its discretion
to grant Plaintiff's request because he fails to bring a timely or arguably
meritorious claim. *See supra* Argument I(B), II(B), III(B). If discovery
should not be permitted when a plaintiff fails to plead a claim upon which
relief could be granted, *see Iqbal*, 566 U.S. at 678–19 ("Rule 8 marks a
notable and generous departure from the hyper-technical, code-pleading
regime of a prior era, but it does not unlock the doors of discovery for a
plaintiff armed with nothing more than conclusions."), certainly the
Court should not impede upon the sovereignty of a Texas agency, raising
grave constitutional concerns about the authority of this Court to compel
state actors. Accordingly, Plaintiff's request for injunctive—truly,
mandamus—relief should be denied.

## III.  The Request for a Stay of Execution Should be Denied.

Plaintiff requests a stay of execution "unless or until an appropriate
pharmaceutical testing facility has assessed the potency and sterility of
the vial of pentobarbital to be used on [Plaintiff] and has obtained the

results that the vial of drug will, in fact, work to execute [Plaintiff]."
Compl. 22.

## A.    The stay standard

"Filing an action that can proceed under § 1983 does not entitle the
complainant to an order staying an execution as a matter of course." *Hill*,
547 U.S. at 583–84. "The party requesting a stay bears the burden of
showing that the circumstances justify an exercise of [judicial]
discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In utilizing that
discretion, a court must consider:

> (1) whether the stay applicant has made a strong showing
> that he is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where the
> public interest lies.

*Id.* at 434 (citations omitted) (internal quotation marks omitted).
"[I]nmates seeking time to challenge the manner in which the State plans
to execute them must satisfy *all* of the requirements for a stay, including
a showing of a significant possibility of success on the merits." *Hill*, 547
U.S. at 584 (emphasis added). "Both the State and the victims of crimes
have an important interest in the timely enforcement of a sentence." *Id.*
Thus, "[a] court considering a stay must also apply 'a strong equitable

presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* Moreover, courts "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* Indeed, "[t]he federal courts can and should protect States from dilatory or speculative suits." *Id.* at 585.

**B.    Plaintiff fails to make a strong showing of probable success.**

As described above, Plaintiff fails to bring a timely claim or one that survives a motion to dismiss. *See supra* Argument I–III. As such, he fails to show any chance of success, let alone a strong showing of likely success. Because this prong of the stay test "is arguably the most important" factor, *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005), a stay should be denied on this basis alone.

**C.    Plaintiff fails to prove that he is likely to suffer irreparable harm.**

Plaintiff also fails to demonstrate that he will likely suffer irreparable harm absent a preliminary injunction. The harm at issue is not Plaintiff's death, but whether it will be accompanied by constitutionally-impermissible pain. But Plaintiff makes no showing that

the present execution protocol or the use of compounded pentobarbital would inflict such pain. *See supra* Argument I(B).

Moreover, the current execution protocol, save changes to the drug used for lethal injection, has been used since at least 2008, and compounded pentobarbital has been used in at least thirty-two executions in Texas "without issue." *Wood I*, 836 F.3d at 540. Since *Wood I*, compounded pentobarbital has been used in an additional twenty-four executions, bringing the total to fifty-six. *Compare Whitaker v. Livingston*, No. H-13-2901, 2016 WL 3199532, at *1 (S.D. Tex. June 6, 2016) (listing thirty-two compounded pentobarbital executions as of June 6, 2016), *with* Texas Department of Criminal Justice, *Executed Offenders*, https://www.tdcj.state.tx.us/death_row/dr_executed_offenders.html (last updated Apr. 25, 2019) (showing twenty-four executions since June 6, 2016). These twenty-four inmates are:

- Barney Fuller. *See* Michael Graczyk, *Texas Man Who Killed Neighbor Couple Executed*, San Antonio Express-News (Oct. 5, 2016, 9:06 PM), https://www.expressnews.com/news/local/article/Texas-man-who-killed-neighbor-couple-executed-9818981.php ("[Barney Fuller] took a couple of breaths, then began snoring. Within 30 seconds, all movement stopped.").

- Christopher Wilkins. *See* Michael Graczyk, *Texas Executes Convicted Killer in First U.S. Execution of 2017*, USA Today (Jan. 11, 2017, 10:12 PM ET), https://www.usatoday.com/story/news/nati

on/2017/01/11/texas-execution-christopher-wilkins/96470784/ ("C-
hristopher Wilkins, 48, was declared dead at 6:29 p.m., 13 minutes
after a lethal injection of pentobarbital.").

- Terry Edwards. *See* Michael Graczyk, *Texas Executes Man
  Convicted of Killing 2 in Subway Shop Holdup*, KXAS-NBC 5 (Jan.
  26, 2017, 10:39 PM CST), https://www.nbcdfw.com/news/local/Man-
  Convicted-of-Killing-2-in-Dallas-Subway-Shop-Holdup-Set-to-Die-
  411846415.html ("As the lethal dose of pentobarbital was
  administered, [Terry Edwards] began snoring quickly. Within
  about 30 seconds, all movement stopped.").

- Rolando Ruiz. *See* Michael Graczyk, *San Antonio Hit Man
  Apologizes Before Execution: "May This Bring You Peace,"* WOAI-
  News 4 (Mar. 7, 2017, 11:50 PM), https://news4sanantonio.com/new
  s/local/sa-hit-man-executed-after-several-hours-delay ("As the
  lethal dose of pentobarbital was administered, [Rolando Ruiz] took
  several deep breaths, then began snoring quietly. All movement
  stopped within about 30 seconds.").

- James Bigby. *See* Michael Graczyk, *Texas Executes Man Who Killed
  2 and Tried to Attack Judge: "I Promise, I'm Sorry,"* Chicago
  Tribune (Mar. 14, 2017, 8:23 PM), https://www.chicagotribune.com/
  news/nationworld/ct-texas-execution-james-bigby-20170314-story.
  html ("As the lethal dose of pentobarbital began, [James Bigby]
  prayed and said several times: 'I promise, I'm sorry.' He was
  singing 'Jesus Loves Me' as the drug took effect, took a few breaths,
  started snoring and then stopped all movement.").

- TaiChin Preyor. *See* Michael Graczyk, *Texas Executes Man for
  Killing Woman in 2004 after Break-In, Chicago Tribune* (July 27,
  2017, 11:25 PM), https://www.chicagotribune.com/news/nationworl
  d/ct-texas-execution-20170727-story.html ("As the lethal dose of
  pentobarbital began taking effect, [TaiChin Preyor] took several
  deep breaths, then began snoring, each sound decreasing in volume.
  Within a minute, all movement stopped.").

- Robert Pruett. *See* Michael Graczyk, *Inmate Executed in Texas for
  Corrections Officer's Death*, Associated Press (Oct. 12, 2017),

https://apnews.com/39d4a94edac74c6687d5d9e41e226119 ("As the lethal dose of the powerful sedative pentobarbital began to flow, [Robert Pruett] started to chant: 'Love. Light. It's forever.' His voice rose as he repeated the phrase. He added obscenities and soon was yelling. He started to slur his words before slipping into unconsciousness. He was pronounced dead at 6:46 p.m. CDT, 29 minutes after being given the drug.").

- Ruben Cardenas. *See* Michael Graczyk, *Mexican Citizen Executed in Texas for Cousin's 1997 Slaying*, KXAS-NBC 5 (Nov. 8, 2017, 11:08 PM), https://www.nbcdfw.com/news/local/Mexican-Citizen-Executed-in-Texas-for-Cousins-1997-Slaying-456279483.html ("As the lethal dose of pentobarbital began, [Ruben Cardenas] took a couple of breaths and then began snoring. After less than a minute, all movement stopped.").

- Anthony Shore. *See* Michael Graczyk, *"Tourniquet Killer Executed in Texas for 1992 Strangling*, U.S. News & World Report (Jan. 18, 2018, 8:21 PM), https://www.usnews.com/news/us/articles/2018-01-18/texas-tourniquet-killer-set-to-be-1st-us-execution-in-2018 ("As the lethal dose of pentobarbital began, [Anthony] Shore said the drug burned. 'Oooh-ee! I can feel that,' he said before slipping into unconsciousness.").

- William Rayford. *See* Michael Graczyk, *Texas Executes Dallas Man for Killing Ex-Girlfriend in 1999*, USA Today (Jan. 30, 2018, 11:05 PM ET), https://www.usatoday.com/story/news/nation/2018/01/30/texas-executes-dallas-man-killing-ex-girlfriend-1999/1081621001/ ("As the lethal dose of pentobarbital began taking effect, [William Rayford] lifted his head from the pillow on the death chamber gurney, repeated that he was sorry and then said he was 'going home.' He began to snore. Within seconds, all movement stopped.")

- John Battaglia. *See* Michael Graczyk, *Texas Executes Man Who Killed His Daughters while Their Mother Was on Speaker Phone*, Chicago Tribune (Feb. 1, 2018, 11:13 PM), https://www.chicagotribune.com/news/nationworld/ct-texas-execution-20180201-story.html ("The powerful sedative pentobarbital began to take effect. 'Oh, I

feel it,' [John Battaglia] said. He gasped twice and started to snore. Within the next few seconds, all movement stopped.").

- Rosendo Rodriguez. *See* Michael Graczyk, *Texas Executes Man Who Stuffed Woman's Body into Luggage*, Associated Press (Mar. 27, 2018), https://apnews.com/8d8327e39a984062ae020fabed261e72 ("[Rosendo] Rodriguez, who turned 38 Monday, received a lethal dose of the powerful sedative pentobarbital, injected by Texas prison officials. Twenty-two minutes later, at 6:46 p.m. CDT, he was pronounced dead.").

- Erick Davila. *See* Michael Graczyk, *Texas Gang Member Executed for Killing Girl, Grandmother*, U.S. News & World Report (Apr. 25, 2018, 8:25 PM), https://www.usnews.com/news/best-states/texas/articles/2018-04-25/fort-worth-gang-member-to-die-for-killing-girl-grandmother ("[Erick Davila] was pronounced dead at 6:31 p.m. CDT, 14 minutes after the lethal dose of the powerful sedative pentobarbital was administered.").

- Juan Castillo. *See* Michael Graczyk, *Inmate Executed for San Antonio Lovers' Lane Killing*, Star Tribune (May 16, 2018, 7:55 PM), http://www.startribune.com/inmate-to-be-executed-for-san-antonio-lovers-lane-killing/482758111/ ("As the powerful sedative took effect, [Juan Castillo] lifted his head off the gurney and used an expletive to say he could taste the drug and that it burned. He took several quick breaths that became snores and then stopped all movement.").

- Danny Bible. *See* Michael Graczyk, *Texas Inmate Executed for 1979 Rape, Murder in Houston*, Associated Press (June 27, 2018), https://www.apnews.com/5a037aa61bc7460e9cd75f269d8983b1 ("[Danny Bible's] head was shaking slightly as the lethal dose of the sedative pentobarbital began. His attorneys said Parkinson's disease was among his ailments. As the drug started to take effect, Bible started taking quick breaths, muttered at one point that it was 'burning' and that it 'hurt.' His breaths then became snores and about a minute after the procedure began, all movement stopped.").

- Christopher Young. *See* Michael Graczyk, *Texas Executes Man for 2004 Slaying of Store Owner*, Associated Press (July 17, 2018), https://www.apnews.com/091ed5622711473dbf8e93190882a8c3 ("As the lethal dose of the sedative pentobarbital began taking effect, [Christopher Young] cursed twice and said the drug burned his throat. 'I taste it in my throat,' he said. Then he slipped into unconsciousness, saying something incomprehensible. He started taking shallow breaths. Within about 30 seconds, he stopped moving and was pronounced dead at 6:38 p.m. CDT.").

- Troy Clark. *See* Juan A. Lozano & Michael Graczyk, *Texas Executes Tyler Man in the Torture, Drowning of Ex-Roommate*, Tyler Morning Telegraph (Sept. 27, 2018), https://tylerpaper.com/news/local/texas-executes-tyler-man-in-the-torture-drowning-of-ex/article_bb86339c-c25f-11e8-9e3b-7726c09cd69e.html ("As the lethal dose of the sedative pentobarbital was administered, [Troy] Clark was laughing and remarked that the drug 'burned going in.' 'I feel it,' he said. Then he grunted, gasped and began to snore. Seconds later, all movement stopped.").

- Daniel Acker. *See* Juan A. Lozano & Michael Graczyk, *Texas Inmate Executed for Killing Girlfriend in 2000*, U.S. News & World Report (Sept. 27, 2018, 7:39 PM), https://www.usnews.com/news/us/articles/2018-09-27/2nd-texas-inmate-set-for-execution-this-week-wants-it-halted ("[Daniel Acker] closed his eyes, took a breath, then slightly exhaled as the lethal dose of the sedative pentobarbital began taking effect. There was no additional movement. He was pronounced dead 14 minutes later at 6:25 p.m.").

- Roberto Ramos. *See* Juan A. Lozano & Michael Graczyk, Mexican Citizen Executed in Texas for Killings of Wife, Kids, U.S. News & World Report (Nov. 14, 2018, 11:45 PM), https://www.usnews.com/news/us/articles/2018-11-14/mexican-man-who-killed-wife-2-children-set-to-die-in-texas ("As the lethal dose of the powerful sedative pentobarbital began taking effect, the 64-year-old [Roberto] Ramos took a couple of deep breaths, sputtered once and began snoring. Within seconds, all movement stopped.").

- Joseph Garcia. *See* Juan A. Lozano & Michael Graczyk, *Member of "Texas 7" Gang Executed for Officer's Killing*, Associated Press (Dec. 4, 2018), https://www.apnews.com/bb6d19c8b85f4c70be7c7c10df7b 8a3f ("[Joseph Garcia] gasped three times and snored twice before all movement stopped. He was pronounced dead at 6:43 p.m.").

- Alvin Braziel, Jr. *See* Juan A. Lozano & Michael Graczyk, *Man Who Killed Newlywed During Robbery Executed in Texas*, Associated Press (Dec. 11, 2018), https://www.apnews.com/c12467fb5f7744c19 8be0f868bab3096 ("As the sedative pentobarbital began taking effect, [Alvin Braziel, Jr.] took a couple of breaths, gasped, then snored loudly three times. The fourth snore was noticeably less pronounced, and then all movement stopped. Braziel was pronounced dead 7:19 p.m., nine minutes after the drug began.").

- Robert Jennings. *See* Juan A. Lozano & Michael Graczyk, *Texas Inmate Executed for Houston Officer's Death*, Associated Press (Jan. 30, 2019), https://www.apnews.com/fcb1c91780674c208485c43df10 ee7e9 ("Jennings was pronounced dead at 6:33 p.m., 18 minutes after the drug started.").

- Billie Coble. *See* Juan A. Lozano & Michael Graczyk, *Chaos Erupts, 2 Arrested During Texas Execution*, Associated Press (Mar. 1, 2019), https://www.apnews.com/088da4f91cbc44be8cda6912c8a3a0d8 ("[A] single dose of pentobarbital was injected into [Billie] Coble. He gasped several times and began snoring as the lethal does of drug was being administered inside the death chamber at the state penitentiary in Huntsville. He was pronounced dead 11 minutes later, at 6:24 p.m.").

- John King. Billie Coble. *See* Juan A. Lozano & Michael Graczyk, *Texas Executes Avowed Racist in Black Man's Dragging Death*, Associated Press (Apr. 25, 2019), https://www.apnews.com/fe0687b 79434424a980cce0b5a513962 ("Within seconds, the lethal dose of the sedative pentobarbital began taking effect. He took a few barely audible breaths and had no other movement. He was pronounced dead at 7:08 p.m. CDT, 12 minutes after the drug began.").

None of the above executions differ substantially from those considered in *Wood I* such that they can be labeled anything other than "without incident." Consequently, Plaintiff fails to prove that he will very likely experience unconstitutional pain during the execution process to demonstrate the necessary level of irreparable harm for a stay of execution.

### D.    The balance of equities favors the State.

Plaintiff has made no claim that the equities favor him. Against this silence, "[b]oth the State and the victims of crimes have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 548. Plaintiff's has had his day in court, his conviction challenges have been extensive and have persisted for more than fifteen years. *See In re Swearingen*, No. 19-20565, 2019 WL 3854457, at *1 (5th Cir. Aug. 16, 2019). Plaintiff's unjustifiable delay in filing suit does not weigh in his favor.

Moreover, Texas has addressed Plaintiff's concern that executions be performed in a constitutional manner—Texas has executed fifty-six inmates using compounded pentobarbital without any constitutionally-impermissible pain. *See supra* Argument V(B); *Wood I*, 836 F.3d at 540.

Accordingly, the public's interest aligns with TDCJ's interests, and this too favors denial of Plaintiff's request to stay his execution.

**E.      Plaintiff has not exercised diligence.**

Plaintiff also fails to demonstrate that he exercised diligence in bringing this suit. "A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584. Plaintiff's suit was filed five days (three business days) before his scheduled execution. The Fifth Circuit has routinely affirmed the denial of stays, or vacated injunctive relief, for filings this dilatory. *See Berry v. Epps*, 506, F.3d 402, 403–405 (5th Cir. 2007) (denying stay filed twelve days before execution); *Summers v. Tex. Dep't Criminal Justice*, 206 F. App'x 317, 318 (5th Cir. 2006) (same but fifteen days before execution); *Kincy v. Livingston*, 173 F. App'x 341, 343 (5th Cir. 2006) (same but twenty-seven days before execution); *Harris v. Johnson*, 376 F.3d 414, 416–17 (5th Cir. 2004) (vacating temporary restraining order based on suit filed ten weeks before execution).

30

And Plaintiff could have brought this suit long ago. TDCJ's execution protocol, save the drug used, has been in place since at least 2008. *See Trottie*, 766 F.3d at 452 n.1. The use of a single dose of pentobarbital has been in place since July 2012. *Id*. at 452. The switch to compounded pentobarbital occurred in September 2013. *See Whitaker*, 732 F.3d at 466. Thus, Plaintiff's claims could have been brought, at worst, more than five years ago. But instead of bringing this suit in a timely manner, Plaintiff is doing "the very thing he is not entitled to do . . . namely, to wait until his execution is imminent before suing to enjoin the state's method of carrying it out." *Harris*, 376 F.3d at 417. Specifically,

> [b]y waiting until the execution date was set, [Plaintiff] left the state with a Hobbesian choice: It could either accede to his demands and execute him in the manner he deems most acceptable, even if the state's methods are not violative of the Eighth Amendment; or it could defend the validity of its methods on the merits, requiring a stay of execution until the matter could be resolved at trial. Under [Plaintiff's] scheme, and whatever the state's choice would have been, it would have been the timing of [Plaintiff's] complaint, not its substantive merit, that would have driven the result.

*Id*. "By waiting as long as he did, [Plaintiff] leaves little doubt that the real purpose behind his claim[s] is to seek a delay of his execution, not merely to affect an alteration of the manner in which it is carried out."

*Id.* Plaintiff's claims "could have been brought [long] ago [and t]here is no good reason for this abusive delay." *Gomez v. U.S. Dist. Court N. Dist. Cal.*, 503 U.S. 653, 654 (1992). As such, Plaintiff's dilatory tactics warrant denial of a stay of execution.

## CONCLUSION

Plaintiff's claims are time barred, speculative, and fail as a matter of law. TDCJ respectfully request that Plaintiff's complaint be dismissed for failing to state a claim upon which relief can be granted, and that his requests for injunctive relief, including a stay of execution, be denied.

Respectfully submitted,

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

 s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
Southern District Admission No. 892308
   *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I do herby certify that on August 19, 2019, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Philip H. Hilder
James G. Rytting
HILDER & ASSOCIATES, P.C.
819 Lovett Boulevard
Houston, Texas 77006

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General