United States District Court
Southern District of Texas

**ENTERED**

August 20, 2019

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY RAY SWEARINGEN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-3079 |
| | § | |
| BRYAN COLLIER, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

The State of Texas has scheduled the execution of Larry Ray Swearingen for August 21, 2019. The Fifth Circuit denied Swearingen a stay of execution on August 16, 2019. Five days before his execution, Swearingen filed a civil rights complaint under 42 U.S.C. § 1983 challenging Texas' method of carrying out his otherwise-constitutional death sentence. (Docket Entry No. 1). Swearingen's complaint raises three claims: (1) a substantial risk exists that he will suffer severe pain during the execution in violation of the Eighth and Fourteenth Amendments; (2) Texas has violated his Fourteenth Amendment rights by denying him access to information about the specific vial of drug to be used in his execution; and (3) a possibility exists that errors will violate Texas state law which prohibits "torture, or ill treatment, or unnecessary pain."[1] Swearingen requests injunctive relief that would (1) require the State to release a vial of pentobarbital for testing or (2) stay his execution.

Swearingen's arguments come before the Court against a long background of lethal-injection challenges. In 1982, the State of Texas adopted lethal injection as its sole method of execution. Texas law does not specify what substance will be used in carrying out lethal injections. Texas

---

[1]  Tex. Code Crim. Pro. Art. 43.24.

adopted a lethal-injection protocol in 2008 involving a three-drug combination.  Texas revised its protocol in 2012 to reflect a shift to pentobarbital as the only agent used in executions, but without any change to its core procedures.  *See Trottie v. Livingston*, 766 F.3d 450, 453 (5th Cir. 2014).[2]

After manufactured pentobarbital became unavailable, Texas began purchasing pentobarbital from compounding pharmacies.[3]  Texas has used compounded pentobarbital in fifty-six executions since 2013.  (Docket Entry No. 3 at 23).  Compounded drugs have a beyond use date ("BUD") after which a drug might not be reliable.  At the core of his complaint, Swearingen argues that Texas plans on using a vial of compounded pentobarbital in his execution that is past its originally established BUD.

According to an affidavit attached to Swearingen's complaint from an expert in pharmacology,[4] absent extended sterility testing, compounded pentobarbital should only have a BUD ranging from twenty-four hours to forty-five days, depending on the manner of storage.  Swearingen's expert alleges that Texas acquired its current supply of pentobarbital on June 18, 2018, but has twice extended the date and has ultimately assigned the vials a BUD of May 6, 2020.  The expert alleges that she has not seen any scientific evidence to support Texas' extension of the BUD.

---

[2]     Federal courts have repeatedly found that an execution protocol using pentobarbital complies with Eighth Amendment requirements.  *See Sepulvado v. Jindal*, 729 F.3d 413, 421 (5th Cir. 2013) ("[F]ederal courts of appeals agree that pentobarbital-only protocols comport with the Eighth Amendment's prohibition against cruel and unusual punishment."); *Thorson v. Epps*, 701 F.3d 444, 447 n. 3 (5th Cir. 2012) (finding that a one-drug protocol is "also acceptable"); *Towery v. Brewer*, 672 F.3d 650, 659 (9th Cir. 2012) (finding a single dose of pentobarbital acceptable); *Valle v. Singer*, 655 F.3d 1223, 1233-38 (11th Cir. 2011) (rejecting the inmate's allegations that pentobarbital is "untested and unsafe for use in judicial lethal injections").

[3]     Compounding pentobarbital "involves dissolving an active ingredient – pentobarbital sodium salt powder – in a water-solvent solution. The mixture is processed into a liquid that can be injected." *Whitaker v. Livingston*, H-13-2901, 2016 WL 3199532, at *1 (S.D. Tex. June 6, 2016).

[4]     Swearingen attaches an affidavit to his complaint from Michela Almgen, a clinical assistant professor of pharmacy at the University of South Carolina.

The expert identifies various possibilities of improper creation, handling, storage, and purity of the pentobarbital that could potentially cause a risk of pain when administered to Swearingen. Swearingen argues that, by not retesting the drugs for potency and sterility, Texas has subjected him cruel and unusual punishment.

The defendants have filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. (Docket Entry No. 3). The defendants argue that all Swearingen's claims should be dismissed as untimely and for failing to state a claim upon which relief may be granted. Also, the defendants argue that Swearingen has not shown an entitlement to injunctive relief or a stay of execution.

## I.    Stay of Execution

Swearingen's lawsuit can only proceed if the Court issues a preliminary injunction, temporary restraining order, or stay of execution. A federal court has inherent discretion when deciding whether to stay an execution. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); 28 U.S.C. § 2251(a)(1).[5] In deciding whether to issue a stay of execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *See Nken*, 556 U.S. at 425-26. "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a

---

[5]    When inmates file motions requesting a preliminary injunction, a TRO, and a stay of execution, courts generally consider all the requests under either the preliminary-injunction or stay-of-execution standard. *See Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016); *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014). The requirements for a preliminary injunction are substantially similar to those for a stay of execution. *See Sells*, 561 F. App'x at 344.

significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S 573, 584 (2006).

Generally, "the possibility of irreparable injury weighs heavily in the movant's favor" in a capital case. *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). Nevertheless, the United States Supreme Court has ruled that an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). The death penalty is irreversible, but there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)). Though the movant in a capital case "need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [i.e., the other three factors] weigh heavily in favor of granting the stay." *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir. 1987).

Other than irreparable injury, the *Nken* factors weigh heavily against staying Swearingen's execution. Importantly, Swearingen's claims are substantially similar to those raised, and rejected, in other cases. While relying on various constitutional provisions, the core of Swearingen's complaint is a challenge to the use of compounded pentobarbital in lethal injections. In *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015), the Supreme Court adopted two elements for a method-of-execution claim: (1) the method of execution must first "present[ ] a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers" and (2) the plaintiff "must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *See also Baze v. Rees*, 553 U.S. 35, 46-47 (2008).

Swearingen is not likely to succeed on the merits of his complaint. From the onset, Swearingen's complaint is deficient for not proposing an alternative feasible method of execution. *See Bucklew v. Precythe*, ___ U.S. ___, 139 S. Ct. 1112, 1128-29 (2019) ("[W]e see little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative—assuming, of course, that the inmate is more interested in avoiding unnecessary pain than in delaying his execution."). Swearingen "suggests that Texas use a firing squad. Firearms when operated by trained individuals are intended to be used, and are proven to be effective, in causing death." (Docket Entry No. 1 at 18). Swearingen's allegations do not suggest that using the firing squad for his imminent execution is feasible or that it could be readily implemented. Texas law and protocol allow for the State to use only one method of execution: lethal injection. The execution warrant specifies that Texas will execute Swearingen by lethal injection. Switching to a different method would require new statutory law, the formulation of new protocol, and the issuance of a new death warrant. Swearingen's proposed alternative is neither feasible nor readily implemented. *See Bucklew*, 139 S. Ct. at 1128-29.

Swearingen has also not adequately pleaded *Glossip*'s first element: that Texas' use of compounded pentobarbital is likely to cause serious illness and needless suffering. The Fifth Circuit has routinely denied relief in substantially similar cases. *See Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017); *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016); *Ladd v. Livingston*, 777 F.3d 286, 289 (5th Cir. 2015); *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014); *Campbell v. Livingston*, 567 F. App'x 287 (5th Cir. 2014); *Sells v. Livingston*, 750 F.3d 478, 481 (5th Cir. 2014); *Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010). In particular, the Fifth Circuit has summarily rejected other challenges based on Texas' calculation of the BUD. *See Battaglia v. Collier*, No. 18-

70005, 2018 U.S. App. LEXIS 2648, at *2 (5th Cir. Feb. 1, 2018); *Whitaker*, 862 F.3d at 496; *Wood*,

836 F.3d at 536.  This Court is bound to follow Fifth Circuit precedent.

Specifically, the Fifth Circuit in *Whitaker* addressed almost identical claims and found  that

raising similar concerns about degraded pentobarbital amounted to pleading hypothetical risks.

*Whitaker*, 862 F.3d at 501.[6]  The district court in *Whitaker* considered various arguments about the

possibility of degradation in pentobarbital and found as follows:

> The plaintiffs made some assertions about the therapeutic use of old pentobarbital but
> did not plead any facts about the rate of degradation of compounded pentobarbital.
> . . .  Texas administers two and a half times the amount of the drug needed to kill a
> person. Alleged complications that develop days or years after a therapeutic dose
> does not establish that Williams or Whitaker will face an intolerable risk of pain
> during the score of minutes it takes for the lethal dose to kill them.
>
> Williams and Whitaker seem to claim that there is something inherently wrong with
> using compounded pentobarbital after the BUD. The BUD merely approximates how
> long a drug is guaranteed to be reliable; its passage does not necessitate a change in
> the drug's reliability nor does it establish that the pain plaintiffs will suffer will be
> more cruel in character or intensity.

*Whitaker*, 2016 WL 3199532, at *8.  The Fifth Circuit affirmed and found that the inmate's

"assertion fail[ed] to reach the Eighth Amendment bar on unnecessarily severe pain that is sure, very

likely, and imminent." *Whitaker*, 862 F.3d at 498.

Here, Swearingen's complaint is likewise based on hypothetical concerns and speculation

about possible injury.[7]  A plaintiff "must make factual allegations as to the substantial risk of the

---

[6]     The *Whitaker* court also addressed concerns about the testing, storage, and use of pentobarbital.  Other cases
have rejected concerns about the lack of notice to an inmate before changing policy or procedure in lethal injections.
*See Whitaker*, 862 F.3d at 501.

[7]     Swearingen also argues that recent uses of compounded pentobarbital "show[s] signs of failure" because some
recent inmates have said that they could "feel it" as the injection began and that they felt "burning." (Docket Entry No.
1 at 14).  At most, Swearingen points to anecdotal evidence that some inmates experienced some pain during their
executions. "[T]he Eighth Amendment does not guarantee a prisoner a painless death . . . ." *Bucklew*, 139 S. Ct. at 1124;
(continued...)

severe pain." *Whitaker*, 862 F.3d at 499 (citing *Glossip*, 135 S. Ct. at 2737). It is not sufficient to request "additional testing . . .to identify an otherwise unknown risk . . . ." *Whitaker*, 862 F.3d at 499. An inmate must show that the protocol is "sure or very likely to cause serious illness and needless suffering." *Baze v. Rees*, 553 U.S. 35, 50 (2008). Swearingen assumes that the pentobarbital that has passed its BUD is degraded, and asks for testing to probe that theory. The State has not had to opportunity to refute that accusation, partly because Swearingen's choice to bring this lawsuit on the eve of his execution has precluded plenary consideration of its merits. Swearingen's claims accrued long ago.[8]

Precedent confirms that a stay is not necessary because of Swearingen's concerns about the potency of the chemical Texas will use to execute him. Aside from Swearingen's core concerns about the BUD, Swearingen's complaint raises concerns about Texas' failure to disclose execution-protocol details, particularly access to information "about the vial of drug intended to be used for his execution, including information about the potency, sterility, and efficacy of the pentobarbital to be used." (Docket Entry No. 1 at 20). Cases have repeatedly rejected Constitutional challenges based on the denial of information about Texas' protocol or specifics about the exact drugs used in an inmate's execution. *See Garcia v. Collier*, 744 F. App'x 231 (5th Cir. 2018); *Whitaker*, 862 F.3d

---

[7]    (...continued)
*see also In re Ohio Execution Protocol*, 860 F.3d 881, 890 (6th Cir. 2017); *Bible v. Davis*, 4:18-cv-1893, 2018 WL 3068804, at *8 (S.D. Tex. June 21, 2018). The absence of evidence that inmates suffered an unconstitutionally excessive level of pain in the dozens of executions carried out by Texas during the time it has used compounded pentobarbital establishes that the defendants are not disregarding a serious risk that the drug will cause undue suffering, but merely a hypothetical risk that it will do so.

[8]    The defendants convincingly argue that Swearingen's claims are time-barred. A two-year limitations period exists for the relevant portions of Texas' protocol. *See Whitaker v. Collier*, 862 F.3d 490, 495 (5th Cir. 2017). Despite recent changes to an unrelated portion of the Texas protocol, the core issues at play have been available to Swearingen since 2012, at least. *See Whitaker*, 862 F.3d at 496. Similarly, any claims based on state law accrued long ago.

at 500. Also, the Fifth Circuit has found that the Constitution creates no obligation to retest the drugs before an execution. *See Wood*, 836 F.3d at 542.[9] Finally, Swearingen has not raised viable claims about any deprivation of his federal constitutional rights, much less those created under state law as alleged in count three.

Swearingen has extensively litigated numerous issues over the last two decades. *See In re Swearingen*, No. 19-20565, 2019 WL 3854457, at \*1 (5th Cir. Aug. 16, 2019) (cataloging the "extensive litigation history of Swearingen's case"). Now, only days before the State executes his death sentence, Swearingen expresses concern about how it will do so. The Supreme Court has instructed that "[t]he proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute stays should be the extreme exception, not the norm." *Bucklew*, 139 S. Ct. at 1134. Swearingen has not shown that this is an extreme case which requires the unusual step of staying the execution of his valid judgment. With that background, Swearingen has not made a strong showing that he is likely to succeed on the merits, that the stay will substantially not injure Texas as it would preclude executing an otherwise-valid judgment, or that the public interests lies in halting his execution. *See Nken*, 556 U.S. at 425-26. The Court will not stay Swearingen's execution.

## II. The Complaint

Section 1915A of title 28 of the United States Code requires a federal district court to

---

[9] The fact that Texas agreed in another case to allow testing did not create a constitutional obligation that entitles other inmates to test the execution drugs. *See Wood*, 836 F.3d at 541 ("The strategic decision of the State of Texas to re-test in one case, in the context of an ever-changing array of suits attacking its use of capital punishment from all angles, is within the discretion inherent in the challenge made here.").

"review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Court must dismiss the complaint if it is frivolous, malicious, or fails to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1).[10] For the same reasons for which Swearingen is not entitled to a stay, the Court finds that the complaint fails to state a claim on which relief can be granted.  Therefore, it must be dismissed under 28 U.S.C. § 1915A.

**III.    Order**

It is **ORDERED**  that:

1.    The plaintiff's request for a temporary restraining order or preliminary injunction is **DENIED**.

2.    The Court **GRANTS** the defendants' motion to dismiss (Docket Entry No. 3).

3.    The complaint (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this _20th_ day of August, 2019.

Andrew S. Hanen
United States District Court Judge

---

[10]    The Fifth Circuit has affirmed a dismissal with prejudice in similar lawsuits. *See Bible v. Davis*, 739 F. App'x 766, 773 (5th Cir. 2018); *White v. Johnson*, 429 F.3d 572, 573-74 (5th Cir. 2005).